## LE CHANGEUR vs. GRAVIER'S HEIRS.

APPEAL from the court of the first district.

MARTIN, J. delivered the opinion of the court. The plaintiff states that Gravier, before the year 1783, was his debtor at Bordeaux, in France, and having called his creditors together, made a concordat with them, by which they released to him 75 per cent, of their respective claims and he promised to pay the balance in three instalments, at 12, 18 and 24 months, but promised that if God blessed his endeavours, he would pay their whole claims, principal

Debt due on a condition, prescription does not begin to run until the condition is accomplished.

A makes a concordat with his creditors, to pay them if he should arrive to better fortune, & dies leaving snfficient to discharge 75 per cent. of the whole. Arelease of any of the creditors of their portion

East'n District. and interest, when his situation would allow
June, 1824.     it.    That, afterwards Gravier married Mrs.
LE CHANGEUR    Renard, who was the owner of the land on
    vs.        which the fauxbourg St. Mary is now estab-
GRAVIER'S      lished, and at her death devised it to him, that
  HEIRS.
enures to the   notwithstanding this happy change in his for-
benefit of the
heirs, not of the tune, he never shewed any disposition to pay
other creditors.

his said debts, &c. and his estate has descended
to the defendants, who refuse to pay.

The general issue and prescription were
pleaded—the plaintiff had judgment, and the
defendants appealed.

The parties have agreed to the following
statement.

Gravier died in New-Orleans, intestate and
without issue in June, 1797.

John Gravier, one of the defendants, a bro-
ther and heir of his, was alone at New Orleans,
and the other heirs were absent.

Guinault was on the 27th of June aforesaid,
appointed to represent the absent heirs.

The moveable and immoveable property of
the estate, valued at $24,378 00 was adjudi-
cated to Jean Gravier, by a decree of August
8th, 1798 ; he paying the debts of the estate
and the shares of the absent heirs, and giving
security.

Other property of the estate, was discovered in 1798, inventoried and valued at $7,800.

Petit and Swan, of Bordeaux, creditors of the estate, sent their power of attorney, and a petition of intervention was filed for them, on the 6th of November, 1798.

On the 16th, Delarua was appointed to represent the absent creditors.    He intervened and claimed communication of the concordate of the deceased, with his creditors.

This document was annexed to the proceedings.    Its date is July 1, 1783.    By it a release of 75 per cent. is allowed and the debtor promises to pay 25 per cent. in 12, 18 & 24 months, and that if God blesses his future endeavours, to pay the whole of the claims, principal and interest, when his situation will permit it.

A decree of the Parliament of Bordeaux, of July 12th, 1784, homologates this concordate.

On the 19th of December, 1798, the real and personal property of the estate, was adjudged to Jean Gravier, at the valuation, with the consent of Delarua and Guinault, and the active debts were placed in his hands for collection, to be accounted for.

They amount to $24,000, and there is no distinction of sperate or desperate debts.

East'nDistrict.
*June*, 1824.

LE CHANGEUR
*vs.*
GRAVIER'S
HEIRS.

Hypothecary deeds, in the inventory, shew that the deceased had given mortgages to secure debts to the amount of $24,000, but nothing shews they were still due.

Inventoried documents shew that the deceased owed debts in Louisiana to an uncertain amount.

The amount of debts in the concordate is $53,671 00, which with interest at 5 per cent. as allowed by the district court to the plaintiff, amount to $106,342.

Nothing shews whether any, or what part, of these debts have been paid.

The amount of the property inventoried in 1797 and 1798 is $31,798 00.

The amount of the plaintiff's debts, appears in the concordate and is not disputed.

The district judge does not appear to us to have erred in concluding that, as the deceased came to better fortune since, by the devise of his wife's property—the plaintiff at that period acquired a right to demand his whole debt, or as much thereof as the debtor was then able to pay. From that period 1798 to the inception of the present suit in 1821, twenty eight years only had elapsed, and so the plea of prescription does not avail.

East'n District.
June, 1824.

Le Changeur
vs.
Gravier's
Heirs.

The allegata present us the only evidence of the deceased coming to a better fortune, the devise of the land on which the fauxbourg St. Mary now stand.

The probata shew property adjudged to the amount of $31,798 and debts, sperate or desperate, to be collected to that of $33,000, in all $55,798.

The debts of the ancestor descended to the heirs, in the situation, in which they were due by him at the time of his death. Three-fourths of the debts, due in Bordeaux, in 1783 had been *released*; but were to be revived and paid *when the debtor's situation permitted it.*

Now, at the time of his death, the gross amount of his estate, including debts of all kinds, sperate or desperate, was not equal to more than about 4 per cent. above the amount of the Bordeaux's debts. It is therefore clear that at the moment, the situation of the estate did not permit the payment of all these debts, principal and interest, and nothing consequently shews they were *revived* against the debtor. If so they could not after his death.

The heirs, succeeding to their ancestor's obligations, cannot be compelled to perform any, which he himself could not. Receiving a gross

East'nDistrict. estate of $55 798, they were bound to dis-
*June*, 1824.     charge the 25 per cent. which their ancestor
LE CHANGEUR  had agreed to pay in Bordeaux, and all the
     *vs.*        debts contracted since the concordat—the bal-
GRAVIER'S     ance in their hands was due a *prorata* to the
  HEIRS.
              creditors of the 75 per cent. which had been
              released and to be revived by the ability of
              the debtor to pay.   The balance after paying
              all other debts, was the measure of this ability,
              and by which the *quantum* revived was to be
              ascertained.    A distribution of this surplus,
              was all the heirs owed to the creditors of the
              75 per cent.   This distribution was to be re-
              ligiously made, and the right of any one of the
              creditors to his proportion, could not be dis-
              charged or diminished by a payment to any
              other creditor of more than his dividend.
              There is no solidarity between these creditors.
              During the life of the nominal debtor, a release
              of the debt of either of these would have avail-
              ed all the others, because it would have increa-
              sed the measure of their respective rights by
              adding to the common stock, the ability of the
              common debtor.   But after his death, the debts
              were divided, each heir became debtor of his
              virile proportion of all the debts as they stood
              due on the death of the ancestor, and as the

East'n District,
June, 1824.

LE GRANGEUR
vs.
GRAVIER'S
HEIRS.

ability of the heir to pay was not the measure of his obligation, a release to him by any of his ancestor's creditors, for these 75 per cent. would be a benefit to his exclusive advantage, which could not avail in increasing the rights of the creditors of the estate, nor his coheirs.

We think the district court erred in allowing to this plaintiff the whole of his debt, principal and interest, because the payment of this is *ultra vires hereditatis,* and the heirs are not liable for any part of the 75 per cent. released, which the situation of the debtor did not permit him to pay. It did not permit him to pay a greater portion of any one of these creditors' debts, to the injury of the other, i. e. if it did not leave wherewith to pay a like proportion to the others.

As the record does not enable us to ascertain the portions of the released debt which the estate can pay, the case must be remanded.

In doing so no wrong is done to the plaintiff. His averment in the petition, denied by the general issue, shews only a devise of a tract of land—the value of which is neither alledged nor proven.

The admissions of the parties, in the statement of facts of the gross amount of the es-

East'n District·
June, 1824.

LE CRANGEUR
vs.
GRAVIER'S
HEIRS.

tate, leave us in darkness as to the *net* one.

The ability of the estate is the principal. point in issue. It is not even alleged—for a man who acquires wherewith to pay one half of his debts, comes thereby to a *better fortune*, without his being able to pay all his debts, principal and interest.

It is therefore ordered, adjudged and decreed, that the judgment be annulled, avoided and reversed, and the case remanded for a new trial—the plaintiff and appellee paying costs in this court.

*Moreau & Dennis* for the plaintiff, *Derbigny* for the defendanst.